691 So.2d 751 (1997)
TREASURE CHEST CASINO, L.L.C., et al.
v.
PARISH OF JEFFERSON, et al.
No. 96 CA 1010.
Court of Appeal of Louisiana, First Circuit.
March 27, 1997.
*752 Robert A. Vosbein, New Orleans, for Plaintiff/Appellee, Treasure Chest Casino, L.L.C.
Kurt C. Garcia, Kenner, for Plaintiff/Appellee, City of Kenner.
Peter J. Butler, New Orleans, for Defendant/Appellant, Parish of Jefferson.
Before CARTER, LeBLANC and PARRO, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment, dismissing a reconventional demand for injunctive relief on an exception pleading the objections of no cause and no right of action.

*753 FACTS

On September 5, 1994, the Louisiana Riverboat Gaming Commission (Commission) issued a certificate of final approval for riverboat gaming operations to Treasure Chest Casino, L.L.C. (Treasure Chest). Pursuant to this certificate, Treasure Chest was to commence its riverboat gaming operations at Lake Ponchartrain, at the north end of Williams Boulevard in Kenner, Louisiana, the vessel's licensed berth site.
In 1994, Jefferson Parish (Jefferson) enacted various ordinances,[1] levying an admission fee pursuant to LSA-R.S. 4:552 A(1), which authorized the levy of an admission fee by the local governing authority of the municipality or parish in which a riverboat is berthed. Jefferson initiated steps to enforce the collection of the admission fee from Treasure Chest. On September 12, 1994, Jefferson made a demand upon Treasure Chest for collection of the $2.50 per person boarding fee. Shortly thereafter, Kenner responded to Jefferson's demand, advising Jefferson that it had no legal authority to impose the admission fee.
Treasure Chest and the City of Kenner (Kenner) subsequently filed a petition for declaratory judgment and injunctive relief, naming as defendants Jefferson and the Commission. Treasure Chest and Kenner alleged that Jefferson was attempting unlawfully to levy an admission fee, pursuant to the provisions of LSA-R.S. 4:552 A, by claiming that the gaming vessel is berthed in an unincorporated area of Jefferson and not within the limits of Kenner. Treasure Chest and Kenner further alleged that the Commission, which has authority over berths, docks, boarding areas, and routes of riverboat gaming facilities, designated the berth site of the Treasure Chest's gaming vessel as Kenner, Louisiana.
Jefferson answered the petition and filed a reconventional demand for a mandatory injunction against Treasure Chest. In its reconventional demand, Jefferson sought judgment, pursuant to LSA-R.S. 4:552 A(1), as well as the parish ordinance, setting forth its entitlement to collect the fees because Treasure Chest lies within Jefferson Parish and because Kenner (as a municipality and the only other governmental authority which might be entitled to collect the fees) had waived its rights to collect the fees. Jefferson also alleged that the berth site of the Treasure Chest is not within the boundaries of Kenner and that, as such, Jefferson is the only governing authority entitled to collect the fees. Accordingly, Jefferson requested an injunction, ordering Treasure Chest to satisfy its liabilities and to pay all future fees.
Thereafter, Treasure Chest filed exceptions pleading the objections of no right of action and no cause of action as to Jefferson's reconventional demand.[2] On January 30, 1995, a hearing on the exceptions was held. On May 28, 1995, the trial court rendered judgment in favor of Treasure Chest and against Jefferson, sustaining the objections of no right of action and no cause of action as to Jefferson's reconventional demand.
From this adverse judgment, Jefferson appeals, assigning the following specifications of error:[3]
1. The district court erred in granting Treasure Chest's exception[s] of no cause of action and no right of action.

*754 2. The district court erred in determining that the berth of Treasure Chest's riverboat is in Kenner.
3. The district court erred in determining that Kenner is the only local governing authority authorized to [levy] an admission fee on Treasure Chest pursuant to La. R.S. 4:552(A).
4. The district court erred in ignoring the obvious effects of Kenner's waiver of "any existing or future right it may have to levy the [admission] fee."
5. The district court erred in determining that language in the Riverboat Gaming Commission's Certificate could deprive Jefferson Parish of its statutory right to levy an admission on Treasure Chest's passengers.
6. The district court erred in determining that the Riverboat Gaming Commission's powers are even at issue in this litigation.
7. The district court erred in determining, in light of Kenner's annexation of the berth area, that Treasure Chest's riverboat lay within the boundaries of Kenner at all times pertinent to this dispute.

PEREMPTORY EXCEPTIONS
The objections of no right of action and no cause of action are properly raised by the peremptory exception.

A. OBJECTION OF NO RIGHT OF ACTION
The objection of no right of action tests whether the plaintiff has a "real and actual interest" in the suit. Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015, p. 4 (La.11/30/94); 646 So.2d 885, 888; Williams v. Mumphrey, 95-643, p. 3 (La.App. 5th Cir. 1/30/96); 668 So.2d 1274, 1275-76, writ denied, 96-0569 (La.3/29/96); 670 So.2d 1240. Stated another way, an exception of no right of action determines "whether the plaintiff belongs to the particular class to which the law grants a remedy for the particular harm alleged." Ferguson v. Dirks, 95-560, p. 4 (La.App. 5th Cir. 11/28/95); 665 So.2d 585, 587; Zar v. Gaudet, 94-533, p. 2 (La.App. 5th Cir. 12/14/94); 648 So.2d 1012, 1013. The exception is appropriate when the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with suit in a particular case. Gorum v. Louisiana Hospital Association Employee Benefit Trust, 95-468, pp. 3-4 (La.App. 3rd Cir. 11/2/95); 664 So.2d 662, 664. LSA-C.C.P. art. 931 permits the introduction of evidence to support or controvert an exception of no right of action.

B. NO CAUSE OF ACTION
The exception of no cause of action questions "whether the law extends a remedy to anyone under the factual allegations of the petition." Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 646 So.2d at 888 n. 3; Williams v. Mumphrey, 668 So.2d at 1275. The purpose of an exception pleading the objection of no cause of action is to determine the sufficiency in law of the petition. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690, p. 2 (La.7/5/94); 640 So.2d 237, 241; Woodland Ridge Association v. Cangelosi, 94-2604, p. 3 (La.App. 1st Cir. 10/6/95); 671 So.2d 508, 510.
Generally, no evidence may be introduced to support or controvert the exception. Woodland Ridge Association v. Cangelosi, 671 So.2d at 510; Parish of Jefferson v. City of Kenner, 95-266, p. 1 (La.App. 5th Cir. 10/31/95); 663 So.2d 880, 881. However, as set forth in City National Bank of Baton Rouge v. Brown, 599 So.2d 787, 789 (La.App. 1st Cir.), writ denied, 604 So.2d 999 (La. 1992), the jurisprudence recognizes an exception to this rule, which allows the court to consider evidence which is admitted without objection to enlarge the pleadings. Woodland Ridge Association v. Cangelosi, 671 So.2d at 510. Otherwise, the exception is triable on the face of the pleadings, and, for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. City of New Orleans v. Board of Commissioners Orleans Levee District, 640 So.2d at 241. The court must determine if the law affords plaintiff a remedy under those facts. Parish of Jefferson v. City of Kenner, 663 So.2d at 881.
*755 When a petition states a cause of action as to any ground or portion of the demand, an exception raising the objection of no cause of action must be overruled. Any doubts are resolved in favor of the sufficiency of the petition. Woodland Ridge Association v. Cangelosi, 671 So.2d at 510.

C. AMENDMENT OF PLEADINGS
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed. LSA-C.C.P. art. 934. Clearly, even if a petition fails to state a cause of action, if the grounds of the objection can be removed by amendment, the plaintiff should be allowed to amend his demand. Baldwin v. Gibbens, 93-1820, pp. 2-3 (La.App. 4th Cir. 4/14/94); 635 So.2d 1317, 1318; Crooms v. Lafayette Parish Government, 628 So.2d 1224, 1226 (La.App. 3rd Cir.1993). However, where the grounds for the objection cannot be removed by amendment, the trial court is not required to allow the pleadings to be amended. See Coker v. State, Department of Elections and Registration, 469 So.2d 451, 454 (La.App. 3rd Cir. 1985).
In resolving the issue of whether Jefferson has a right of action and/or whether Jefferson's reconventional demand sets forth a cause of action, it is necessary to determine which local governing authority (Kenner or Jefferson) is authorized to levy an admission fee, pursuant to LSA-R.S. 4:552. In order to make this determination, we must examine the statute as originally enacted, together with the subsequent amendments, to determine the legislature's precise intent in enacting the provisions.

INTERPRETATION OF LSA-R.S. 4:552 A(1)
By La. Acts 1991, No. 753, § 1, the Louisiana legislature enacted LSA-R.S. 4:552, authorizing local governing authorities to levy admission fees for passengers on riverboats.
As enacted, LSA-R.S. 4:552 A initially provided as follows:
The local governing authority of the parish or municipality in which the licensed berth of a riverboat is located may levy an admission fee of up to two and one half dollars for each passenger boarding or embarking upon a riverboat. For purposes of this Section, licensed berth shall mean the berth, dock, facility or boarding area from which a riverboat excursion is authorized to originate by the commission.
The legislative history reveals that the legislature intended that an admission fee would be charged by the municipality if the berth of the riverboat was located in a municipality, and, in those instances, the parish would not be entitled to levy any admission fee. Moreover, if the riverboat was berthed in the unincorporated area of the parish, then only the parish would be entitled to levy an admission fee on passengers of riverboats. The minutes of the Senate Committee on Judiciary B for June 25, 1991, reflect that, in discussing House Bill No.1999, which became Act 753, the committee discussed the $2.50 passenger boarding fee in the parish of Jefferson, as follows:
SEN. WINDHORST: And what revenues directly does the state coffer or the local government get?
REP. HEITMEIER: The local government, there is a provision in ... there about $2.50 per head that they can charge.
SEN. WINDHORST: That goes to the local government?
REP. HEITMEIER: Yes, sir.
SEN. HOLLIS: That's optional. That's optional for the local governing authorities can levy up to $2.50 per passenger.
SEN. WINDHORST: I could understand how that would work in a city like New Orleans which has the parish limits and the city limits coextensive. How would that work in a parish like Gretna. I represent the city of Gretna which is inside the parish of Jefferson, but Jefferson obviously has six municipalities and unincorporated areas. Are we talking anything going to the city of Gretna or would it all be for the parish of Jefferson.

*756 SEN. LAURICELLA: Where they board the ship?
SEN. WINDSHORST: I don't know.
REP. LALANDE: Wherever the dock is.
SEN. WINDHORST: If the dock is in Gretna the city of Gretna would enjoy.
SEN. HOLLIS: The site of origin.
SEN. WINDHORST: Well the city of Gretna is also in the parish of Jefferson. I am asking would it go to Jefferson parish or the city of Gretna.
REP. HEITMEIER: They tell me it would go to the parish.
SEN. WINDHORST: Well, he is shaking his head one way and you another. I am not trying to cause trouble. I am trying to understand, because believe me the city of Gretna is going to ask me. If they put a berth in Gretna does Gretna get it or does Jefferson parish get it? I assure you they are going to ask me that.
REP. HEITMEIER: Counsel behind me is telling me if there is a berth in the parish, the parish gets it. If it is berthed in the municipality, then fee would go to the municipality.
SEN. WINDHORST: Tug of war, ships from Baton Rouge to the parish council in the city of Gretna, or the city of Kenner or wherever.
REP. HEITMEIER: They may be fighting over who wants the berth of the vessel.
SEN. LAURICELLA: Further extension of that question, Mr. Chairman, if you had municipalities in the parish, does the money go to only parish government? If we are going to be all inclusive so they don't fight and have a wharf in each. In Jefferson parish we have four municipalities right on the river. Now is everyone going to have a wharf or in the means of cooperation they end up saying we have it here and here and then but the money is shared by all on some type of effort. I think maybe that's up to us to decide locally if we want to put it on a pro rata basis, per capita basis, in Jefferson parish. Because that way you don't burden one area if there is inconvenience to it, or competition where they are going to be competing against themselves for these berths.
REP. LALANDE: I think you have to look at the people who are going to be owning it. Where do they want [it], where they feel is best for them economically, whether it is the berth in Gretna or Algiers.
SEN. LAURICELLA: We are not talking about berthing, we are talking about the sharing of the monies.
SEN. KELLY: No, sir, Sen. Lauricella, I don't think you understand what Barton just got through saying a while ago. It's where it is berthed from, they get all of the money.
SEN. LAURICELLA: It's parish, he said.
SEN. KELLY: No, sir.
SEN. HOLLIS: No, sir, it is where it is berthed from. If it is berthed from Metairie, if in fact you berth it from Metairie, the unincorporated portion of Jefferson parish would then get the funds. If it is docked from Kenner, the city of Kenner would get the funds and Jefferson parish would not get any of the funds.
SEN. WINDHORST: From my standpoint, I am satisfied....
By La. Acts 1993, No. 405, § 1, the Louisiana legislature amended LSA-R.S. 4:552 A,[4] designating the pre-existing subject matter of Section A as Subsection A(1) and adding various other subsections, including Subsection A(4). After amendment in 1993, LSA-R.S. 4:552 A(4) provided, in pertinent part, as follows:
The admission fee which the local governing authority of the parish or municipality may levy for each passenger boarding or embarking upon a riverboat in accordance with Paragraph (1) of this Subsection, when the riverboat is licensed to operate within Jefferson Parish shall be allocated as follows:

*757 (a) Thirty-two percent to the governing authority where the boat is located.
(b) Twenty-two percent to the city of Kenner.
(c) Fifteen percent to the city of Gretna.
(d) Fourteen percent to the city of Harahan.
(e) Fourteen percent to the city of Westwego.
(f) One and one-half percent to the city of Lafitte.
(g) One and one-half percent to the city of Grand Isle.
The legislative history of Act 405 again reflects that the legislature intended that the admission fee would be charged by the municipality if the berth of the riverboat was located in a municipality, and, in those instances, the parish would not be entitled to levy any admission fee. Moreover, if the riverboat was berthed in the unincorporated area of the parish, then only the parish would be entitled to levy an admission fee on riverboat passengers. The minutes of the Senate Committee on Judiciary B for May 25, 1993, reflect that, in discussing House Bill No.2072, which became Act 405, the legislature noted that, except as specifically designated in the amendments, which affected Bossier, Caddo, and Jefferson Parishes, the $2.50 admission fee would go to "the city or the parish, depending upon where it is actually berthed."[5]
By La. Acts 1994, 3rd Extraordinary Session, No. 31, § 1, the Louisiana legislature amended LSA-R.S. 4:552 A(4) to allocate the admission fees levied on riverboat passengers in unincorporated areas of Jefferson Parish. After amendment in 1994, LSA-R.S. 4:552 A(4) provided as follows:
The admission fee which the local governing authority of the parish or municipality may levy for each passenger boarding or embarking upon a riverboat in accordance with Paragraph (1) of this Subsection, when the riverboat is licensed to operate within the unincorporated area of Jefferson Parish on the West Bank of the Mississippi River, shall be allocated as follows:
(a) Thirty-two percent to the parish governing authority of Jefferson Parish which shall be expended solely within the unincorporated areas of Jefferson Parish on the West Bank of the Mississippi River.
(b) Twenty-nine percent to the city of Gretna.
(c) Twenty-nine percent to the city of Westwego.
(d) Five percent to the town of Lafitte.
(e) Five percent to the town of Grand Isle.
By La. Acts 1995, No. 195, § 1, the Louisiana legislature again amended LSA-R.S. 4:552 A(4) to provide as follows:
The admission fee which the local governing authority of the parish or municipality may levy when the riverboat is licensed to operate within the unincorporated area of Jefferson Parish on the West Bank of the Mississippi River shall be calculated by the parish council and shall be six percent of the weekly net gaming proceeds of that riverboat. The first two hundred thousand dollars of these monies shall be allocated for and distributed to the West Bank Civic and Sports Center for operations of the center. Thereafter, the proceeds from the remainder of such fees shall be allocated as follows:
(a) Thirty-two percent to the parish governing authority of Jefferson Parish which shall be expended solely within the unincorporated areas of Jefferson Parish on the West Bank of the Mississippi River.
(b) Twenty-nine percent to the city of Gretna.
(c) Twenty-nine percent to the city of Westwego.
(d) Five percent to the town of Lafitte.
(e) Five percent to the town of Grand Isle.
*758 By La. Acts 1996, 1st Extraordinary Session, No. 7, § 1, the Louisiana legislature enacted Title 27 of the Louisiana Gaming Control Law. Section 3 of this Act directed the Louisiana Law Institute to re-designate LSA-R.S. 4:501 through 562 as LSA-R.S. 27:41 through 113.
At all pertinent times, LSA-R.S. 4:552 A (now LSA-R.S. 27:93 A) provided as follows:[6]
(1) The local governing authority of the parish or municipality in which the licensed berth of a riverboat is located may levy an admission fee of up to two and one-half dollars for each passenger boarding or embarking upon a riverboat; provided that in Bossier Parish and Caddo Parish an admission fee of up to three dollars may be levied. For purposes of this Section, "licensed berth" shall mean the berth, dock, facility, or boarding area from which a riverboat excursion is authorized to originate by the commission or from which a riverboat is authorized by the commission to operate. (emphasis added.)
* * * * * *
(4) The admission fee which the local governing authority of the parish or municipality may levy when the riverboat is licensed to operate within the unincorporated area of Jefferson Parish on the West Bank of the Mississippi River shall be calculated by the parish council and shall be six percent of the weekly net gaming proceeds of that riverboat. The first two hundred thousand dollars of these monies shall be allocated for and distributed to the West Bank Civic and Sports Center for operations of the center. Thereafter, the proceeds from the remainder of such fees shall be allocated as follows:
(a) Thirty-two percent to the parish governing authority of Jefferson Parish which shall be expended solely within the unincorporated areas of Jefferson Parish on the West Bank of the Mississippi River.
(b) Twenty-nine percent to the city of Gretna.
(c) Twenty-nine percent to the city of Westwego.
(d) Five percent to the town of Lafitte.
(e) Five percent to the town of Grand Isle.
These statutory provisions clearly authorize the local governing authority of the parish or municipality in which the licensed berth of a riverboat is located to levy an admission fee. The statute specifically defines the "licensed berth" as the berth "from which a riverboat excursion is authorized to originate by the commission or from which a riverboat is authorized by the commission to operate." Based on the legislative intent and our interpretation of the applicable law, we hold that, if the berth site is a municipality, then, the municipality only has the authority to levy the admission fee. If the berth site is an unincorporated area of a parish, then the parish has the authority to levy the admission fee.
In this case, the Commission issued a certificate to Treasure Chest for operations at the vessel's berthKenner, Louisiana. As such, Kenner was the only local governing authority authorized by LSA-R.S. 4:552 A to levy the admission fee.[7]
The provisions of other portions of LSA-R.S. 4:552 support this conclusion. LSA-R.S. 4:552 A(4) specifically recognizes that, when the riverboat is licensed to operate within the unincorporated area of Jefferson Parish on the west bank of the Mississippi River, the admission fees collected are to be distributed in specified proportions to certain *759 municipalities. Although previous versions of LSA-R.S. 4:552 A(4) authorized Kenner to receive a portion of admission fees collected by Jefferson, the current version of the statute specifically excludes Kenner from the municipalities which share in admission fees collected by Jefferson in its unincorporated areas.
We further note that the Jefferson ordinance authorizes the parish to levy a per passenger admission fee for each person embarking on a riverboat authorized by the Commission to originate from an area "within the territorial limits of Jefferson Parish." However, the authority granted to Jefferson in this ordinance clearly conflicts with the state statutory provisions governing the levying of admission fees. LSA-R.S. 4:552 B (now LSA-R.S. 27:93 B) specifically prohibits any local governing authority from licensing or regulating the operation of riverboats and the gaming operations conducted thereon, other than the levy of the admission fee set forth in LSA-R.S. 4:552 A.
Based on the above, we find that the trial court was correct in determining that Jefferson does not have a right of action to levy the admission fee for the passengers boarding the Treasure Chest's vessel, which has as its licensed berth Kenner, Louisiana. The grounds for the objection filed by Treasure Chest cannot be removed by amendment, therefore, it is unnecessary to permit Jefferson an opportunity to amend its reconventional demand.
Because of our determination that Jefferson does not have a right, under LSA-R.S. 4:552, to levy an admission fee for passengers boarding the Treasure Chest's riverboat, we find it unnecessary to determine the propriety of the sustaining of the objection of no cause of action.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, sustaining the peremptory exception pleading the objection of no right of action, is affirmed. Costs of this appeal, in the amount of $1,018.46, are assessed against the Parish of Jefferson.
AFFIRMED.
PARRO, J., dissents and assigns reasons.
PARRO, Judge, dissenting.
The focus of the majority opinion is on the interpretation of LSA-R.S. 4:552(A) and the legislative history surrounding that statute's enactment. However, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9.
The pertinent portion of LSA-R.S. 4:552(A)(1) states "[t]he local governing authority of the parish or municipality in which the licensed berth of a riverboat is located may levy an admission fee." For the sake of argument, it is accepted that the licensed berth of the Treasure Chest riverboat is located in Kenner. But since Kenner is located within the territorial limits of Jefferson Parish, it follows that the licensed berth is also located in Jefferson Parish. Therefore either Jefferson Parish or Kenner is authorized to levy an admission fee under the facts of this case. However, because Kenner waived its right to levy such a fee in its lease with Treasure Chest, Jefferson Parish is the only local governing authority authorized to levy the fee, which it did by ordinance.
Obviously, the application of the law set forth in LSA-R.S. 4:552(A)(1) does not lead to absurd consequences under the facts of this case and the law should be applied as written. Clearly, Jefferson has a right of action to bring its reconventional demand, and accepting all allegations as true, Jefferson has stated a cause of action. I would reverse the judgment of the trial court.
I respectfully dissent.
NOTES
[1] On May 4, 1994, Jefferson enacted Ordinance No. 19063, which amended § 35-300, to provide for the assessment of an admission fee of $2.50 for each passenger boarding or embarking on a riverboat with casino-type gaming "in the unincorporated area of Jefferson." (Emphasis added.)

On October 5, 1994, Jefferson adopted Ordinance No. 19209, amending § 35-300, to levy a fee of $2.50 for each person boarding and embarking on each riverboat as defined in the ordinance.
Subsection (C)(6) of the ordinance defined "[r]iverboat" as a "vessel licensed by the Riverboat Gaming Commission ... for the conduct of casino-type gaming and which is authorized by the commission to originate its excursions from a berth, dock, facility or boarding area within the territorial limits of the Parish of Jefferson." (Emphasis added.)
[2] The parties filed various other pleadings, none of which are relevant to the issues presented in this appeal.
[3] Although we will not address each assignment of error individually, the opinion disposes of all issues presented.
[4] La. Acts 1993, No. 572, § 1, also amended the existing text of LSA-R.S. 4:552 A to hyphenate "two and one-half dollars," to insert quotation marks around "licensed berth" in the first sentence, and to insert "from which a riverboat is authorized by the commission to operate" at the end of the paragraph.
[5] The minutes of the House Criminal Justice Committee for May 16, 1993, reflect that, in discussing House Bill No.2072, the legislature, added an "allocation of admission fees among governing authorities in Jefferson Parish when a riverboat is licensed to operate within an unincorporated area of the parish on the west bank of the Mississippi River." (Emphasis added.)

Although the language of House Bill No.2072 was not added to LSA-R.S. 4:552 A(4) during that legislative session, the language was changed in a subsequent legislative session.
[6] LSA-R.S. 4:552 A was also amended by La. Acts 1995, Nos. 743, § 1, and 1311, § 1. However, these amendments are not pertinent to the issues presented in this appeal.
[7] We note that it is of no moment that Kenner negotiated away its right to collect the admission fee in its lease agreement with Treasure Chest. The fact that Kenner is not collecting the admission fee does not alter the statutory language that only the local governing authority of the licensed berth of the riverboat designated by the Commission may levy an admission fee.