754 So.2d 1011 (1999)
Claude STEPHENSON, et al.
v.
NATIONS CREDIT FINANCIAL SERVICES CORP.
John Han, et al.
v.
Claude Stephenson, et al.
No. 98 CA 1688, 98 CA 1689.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
*1013 Robert McComiskey, Christopher Gobert, Metairie, for Plaintiffs/Appellants, Claude Stephenson, et al.
John K. Han, New York City, for Defendants/Appellees, John Han, et al.
Before: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
CARTER, C.J.
This appeal arises out of a petition for declaratory judgment filed by Claude and Nelwyn Stephenson (the Stephensons), and Robert Schorr[1] (Schorr). Nations Credit Financial Services Corporation (Nations), was named as the defendant in the petition that sought a declaration of the existence of a public right of way and servitude of passage across property that was owned by Nations at the time the petition was filed. Part of this property adjoined the Stephensons' property. Nations agreed to execute a consent judgment in favor of the Stephensons and Schorr. However, prior to the execution of the consent judgment, the property was sold by Nations to several members of the Han Family.[2] Three months after this sale, the consent judgment was executed by counsel for Nations, the Stephensons and Schorr, and was signed by the trial court. Upon learning of the consent judgment, the Hans sought and obtained a judgment annulling the consent judgment because the Hans were persons required by LSA-C.C.P. art. 641 to be joined as parties, but were not made parties to the declaratory judgment action. The Stephensons and Schorr filed a motion for new trial, which motion was denied. They then appealed from the judgment granting the petition for nullity and from the judgment that denied the motion for new trial and granted a preliminary injunction.

FACTUAL BACKGROUND
The Stephensons own a parcel of property which is bordered on the east and northeast by the property that is the subject of this appeal. The Stephensons claim to have used a road, which runs east and west through the Hans' property, as the only means of accessing a public road from their property. Accordingly, the Stephensons contend that a 40 foot "public right of way"[3] exists on the Hans' property and *1014 that their property is favored with a servitude of passage upon the right of way. Schorr owns property located to the west of the Stephensons and also contends he used the road running through the Hans' property and the Stephensons' property as the only means of accessing a public road from his property.
Dr. David M. Jarrott was the owner of the subject property from 1983 until 1996. The subject property measures approximately 18 acres, consisting of two contiguous tracts of land. The northern tract contains approximately 8.61 acres, and the southern tract contains approximately 9.97 acres. Dividing the northern and southern tracts is a road that runs east to west through the subject property. This road commences as a driveway at its intersection with the road bordering the subject property to the east. A mortgage on the property was executed in favor of Nations to secure payment of a loan made by Nations to Dr. Jarrott. When Dr. Jarrott defaulted on the loan from Nations in early 1996, Nations became the owner of the property.
In October 1996, appellants, the Stephensons and Schorr, became aware that the property was being offered for sale by Nations. Concerned that a new owner may not acknowledge the existence of the "right of way" through the property in favor of appellants' properties, appellants filed a Petition for Declaratory Judgment against Nations, as the record owner of the property. On November 11, 1996, the Hans signed a purchase agreement on the property. In connection with the purchase agreement, John Han and Youn Han initialed certain "Seller's Special Stipulations." One of the stipulations provided that the "[s]ale is subject to the 40' & 50' right of ways."[4]
In November or early December, Nations verbally agreed to enter a consent judgment recognizing the existence of a "public right of way" through the subject property. However, Nations' counsel did not want to sign the consent judgment until he received written authorization from his client. Accordingly, the consent judgment was prepared, but not executed.
Thomas Guidry was the attorney retained by the Hans to represent their interests in closing the sale of the subject property. Correspondence between Mr. Guidry and Nations' counsel exchanged on December 20, 1996, reflects that Mr. Guidry was aware both of the pending litigation between Nations and appellants, and of Nations' intention to enter into a consent judgment granting a public right of way and a predial servitude of passage in favor of appellants' properties. Mr. Guidry even received a copy of the proposed consent judgment on December 20.
The Hans purchased the property by Act of Cash Sale on January 3, 1997. Immediately prior to the execution of the Act of Cash Sale, Mr. Guidry discussed with the Hans the pending litigation between appellants and Nations pertaining to the subject property; the existence and legal and practical implications of the right of way asserted in the pending litigation; and the fact that Nations had conceded the existence of a 40 foot right of way through the subject property that the Hans were about to buy and had agreed to and intended to execute a judgment to the same effect. A provision in the Act of Cash Sale addressing a 40 foot right of way in favor of appellant Stephensons' property was specifically pointed out to the Hans. This provision stated: "[T]he [subject] property is conveyed and accepted subject to all restrictions, servitudes ... affecting the above property of record as contained in *1015 the conveyance records and plats ... including but not limited to ... a forty (40') foot right of way in favor of property presently owned by Claude Stephenson." According to Mr. Guidry, the Hans indicated that "they knew they would have no legal right to prevent others from exercising the forty foot (40') right of way referenced in the Act of Cash Sale." The Hans then proceeded to execute the Act of Cash Sale on January 3, 1997.
Counsel for appellants sent a letter to Nations' counsel on January 7, 1997, to confirm a telephone conference they had on December 30, 1996, regarding the consent judgment. In the letter, appellants' counsel expressed concern that the delayed response to the proposed consent judgment was intended to prohibit appellants from recording the judgment prior to the sale of the property to the Hans. The letter requested immediate approval from Nations so that the matter could be put "to rest." Despite this request, no further action was documented until March, when appellants' counsel propounded a request for admissions to Nations seeking to compel execution of the consent judgment.
On April 11, 1997, John Han sent a letter to Dr. Stephenson regarding the claim for an "easement through [the] property." John Han noted that after examining the deed and property records, he was unable to find any recording of such an "easement." Thus, John Han requested any documents that established the legal right of appellants to an "easement" through the subject property. Shortly thereafter, on April 28, 1997, the consent judgment was signed by counsel for Nations, counsel for appellants and the trial judge. The consent judgment recognized: 1) the existence of a public right of way through the property; 2) that appellants as owners of dominant estates, are favored with a servitude of passage upon the said right of way; and 3) that maintenance by any person of encroachments upon the said right of way and/or impeding passage by any means thereupon is illegal and prohibited. This judgment was recorded in the official records of Tangipahoa Parish the next day. The Han family learned about the consent judgment on May 23, 1997.

PROCEDURAL BACKGROUND

The Han's Motions Pertaining to the Consent Judgment
On May 27, the Hans filed motions to annul the consent judgment, for a preliminary injunction and for partial summary judgment. These motions were all filed under the caption and suit number of appellants' declaratory judgment action. On this same day, the Hans also filed an answer and reconventional demand in response to the declaratory judgment action.
In the motion to annul the consent judgment, the Hans argued that the failure to name them, the only real party in interest and only true defendant, as a defendant constituted a vice of form and rendered the judgment null pursuant to LSA-C.C.P. art.2002. They also asserted that the consent judgment was obtained by fraud or ill practices and therefore null pursuant to LSA-C.C.P. art.2004. Finally, the Hans asserted that they were indispensable parties and any adjudication made without them being made a party was an absolute nullity. See LSA-C.C.P. art. 641.
In the motion for preliminary injunction, the Hans contended they were entitled to injunctive relief as owners of real property to protect their property during the pendency of a possessory action. See LSA-C.C.P. art. 3663. Alternatively, they argued entitlement to injunctive relief under LSA-C.C.P. art. 3601. Finally, the Hans contended that the evidence presented to establish the preliminary injunction was sufficient to warrant partial summary judgment in their favor, dismissing appellants' complaint and declaring that no right of way or "easement" existed through the Hans' property.

*1016 Appellants' Dilatory and Declinatory Exceptions to the Hans' Motions
Appellants filed a dilatory exception raising the objections of improper use of summary procedure and lack of procedural capacity and the declinatory exception raising the objections of insufficiency of citation and service. Nations filed a memorandum in response to the allegation that it had committed "fraud" upon the Hans. The trial court granted all of appellants' exceptions, denied the Hans' motions and ordered that the fraud claim made by the Hans against Nations be stricken from the record.[5]

The Hans' Petition for Nullity of the Consent Judgment
On August 5, under a new caption and suit number, the Hans filed a Petition for Nullity of Judgment, Injunction, Damages, and Declaratory Judgment. Appellants were named as defendants in the petition. Through this petition, the Hans sought basically the same relief which they had sought previously through motions in the declaratory judgment action. Pursuant to the motion of appellants, the Hans' suit was transferred to and consolidated with the declaratory judgment action filed by appellants against Nations.

Appellants' Peremptory Exceptions to the Hans' Petition for Nullity
Three months later, and a few days prior to the scheduled hearing on the Hans' petition, appellants filed a peremptory exception raising the objections of no cause of action and no right of action, in response to the Hans' petition for nullity, injunctive relief, damages and declaratory judgment. Appellants also filed an answer to the petition along with affidavits executed by Dr. Stephenson and Schorr.[6] The hearing on the petition and exception was held on November 17, at the conclusion of which the matter was taken under advisement. Both parties filed post-hearing memorandums. On January 7, 1998, the trial court signed a judgment on the petition and exceptions, denying the exceptions and ordering that the consent judgment be annulled. The basis for the court's annulment of the consent judgment was the failure of appellants to join the Han Family as a party to the action prior to obtaining the consent judgment. In this judgment, the trial court also found that the lack of documentation recorded in the public records regarding the alleged right of way mandated the finding that a right of way does not exist. The trial court rendered judgment in favor of the Hans and against appellants.

Appellants' Motion for New Trial
Appellants timely filed a motion for new trial and alternatively, a motion to amend the judgment. As they had asserted in their peremptory exception, appellants again argued that because the Hans failed to intervene in the original proceedings or appeal from the consent judgment, they had no cause or right to seek an annulment of the consent judgment. Also, because the Hans did not avail themselves of these legal remedies, appellants asserted that the Hans were prohibited from seeking injunctive relief. Appellants further contended that the judgment erroneously relied upon the public records doctrine; and failed to recognize the existence of a predial servitude where a predial servitude was recognized in the consent judgment and the predial servitude was specifically referenced in the sales documents. Finally, appellants asserted that several aspects of the relief granted by the January 7 *1017 judgment were ambiguous and unclear. The Hans filed an opposition memorandum arguing that the motion for new trial or to amend the judgment should be denied. However, the Hans did not file a motion for new trial or otherwise seek amendment of the January 7 judgment.
The next day, March 19, appellants filed a supplemental memorandum in support of their motion for new trial, asserting that the Stephenson property was an enclosed estate and thus, entitled to a legal servitude of passage through the Hans' property. Appellants relied on LSA-C.C. arts. 689 and 694 as authority for their entitlement to the legal servitude and filed supporting affidavits and correspondence allegedly establishing that the Stephenson property had no access to a public road. On March 23, the day of the hearing, the Hans filed a supplemental opposition memorandum, in which they contended that appellants' enclosed estate argument should not be considered because it was not raised during the original hearing on the merits and because the evidence allegedly showed that the Stephenson property was not enclosed. Various documents related to prior sales of appellants' property were attached to the Hans' supplemental opposition memorandum.
At the conclusion of the hearing, the trial court denied the motion for new trial and amended the original January 7 judgment to grant the Hans a preliminary injunction restraining appellants from using the subject road on the Hans' property. A judgment in accordance with this ruling was signed on April 14.
Appellants filed this appeal from the April 14 judgment denying the motion for new trial and from the underlying January 7 judgment through which the April 28, 1997 consent judgment was annulled. In their brief, appellants assert four assignments of error:
I. The trial court erred failing to recognize that a predial servitude need not be recorded to be valid and consequently erred annulling the consent judgment.
II. The trial court erred relying on LA.C.C.P. Arts. 641 and 2002, nonjoinder of the Hans in the original declaratory action is not fatal thereto and in the circumstances does not give rise to an action to annul.
III. The Hans have neither right nor cause of action to assert in these proceedings given their failure to intervene in the original declaratory judgment action; the trial court erred holding otherwise.
IV. The Hans are not entitled to injunctive relief having failed to avail of legal remedies [sic]; the trial court erred holding otherwise.
The first two of these assignments of error address the propriety of declaring the consent judgment a nullity. The third assignment of error addresses denial of the peremptory exceptions, and the final assignment of error addresses the grant of injunctive relief in the judgment denying the motion for new trial.

NULLITY OF CONSENT JUDGMENT (Assignments of Error I and II)
In this case, a consent judgment was rendered that directly affected property owned by the Hans. The Hans were never made parties to the litigation that resulted in the consent judgment, despite the appellants' knowledge, obtained three months before the consent judgment was executed, that the Hans had become the owners of the subject property. However, at the time the subject property was purchased by the Hans, the Hans had knowledge that litigation instituted by appellants against the vendor of the subject property was pending and the vendor had agreed to a consent judgment acknowledging the existence of a public right of way and servitude of passage upon the subject property. The issue becomes whether that consent *1018 judgment was a valid judgment, and if not, was an action for nullity of the consent judgment the proper procedural vehicle to contest the validity of the consent judgment.

Validity of Consent Judgment
Appellants contend that the consent judgment was valid because, at the time the property was sold to the Hans, the Hans had express knowledge of the pending declaratory judgment litigation, proposed consent judgment and of the actual right of way and servitude referenced in the sales documents. Thus, appellants contend the Hans cannot now complain about the consent judgment recognizing the existence of a right of way and servitude of passage through the Hans' property.
A court may not grant passage over lands of neighbors who are not parties to the suit. See Vermilion Parish School Board v. Broussard, 263 La. 1104, 1112, 270 So.2d 523, 526 (1972). The Broussard case involved a suit by an enclosed landowner for a servitude of passage across the defendant's land. The court found that the defendant established the existence of a shorter route to another public road from the enclosed landowner's property across a different neighbor's land, thereby defeating the enclosed landowner's claim against defendant. The Broussard court noted that any rights the enclosed landowner may have against other adjoining landowners for access to its enclosed property must be determined in a suit against those parties. See also, Rockholt v. Keaty, 256 La. 629, 642-43, 237 So.2d 663, 668 (1970); A.N. Yiannopoulos, Predial Servitudes, § 95, at 277, in 4 Louisiana Civil Law Treatise (2nd ed.1997).
The Louisiana Code of Civil Procedure provides that a person shall be joined as a party in the action when he claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may, as a practical matter, impair or impede his ability to protect that interest. LSA-C.C.P. art. 641. Articles 641 through 646 were amended by 1995 La. Acts No. 662, § 1. Prior to these amendments, the party described in Article 641 was referred to as an indispensable party, and there could be no adjudication unless all indispensable parties were joined in the action. See Matherne v. Guilliot, 544 So.2d 723, 725 (La.App. 3rd Cir.), writ denied, 551 So.2d 633 (La.1989). While the latter provision no longer appears in Article 641, the article still makes mandatory the joinder of the person described in Article 641 as a party to the suit.[7] It is only when a person described in Article 641 cannot be made a party, that the court must determine whether the action should proceed among the parties before it, or should be dismissed. LSA-C.C.P. art. 642. One factor to be considered by the court when a person cannot be made a party to an action is to what extent a judgment rendered in the person's absence might be prejudicial to him. LSA-C.C.P. art. 642. As was the case before the 1995 amendments to these code articles, the failure to join a party to an action may be pleaded in the peremptory exception, or may be noticed by the trial or appellate court on its own motion. LSA-C.C.P. art. 645.
Although these provisions were amended, we do not find that it changes the principle that an action cannot be adjudicated *1019 unless all persons who are required by Article 641 to be joined as parties are joined in the litigation. Thus, an adjudication made without making a person described in Article 641 a party to the litigation is an absolute nullity. Frey v. American Quarter Horse Association, 95-157, p. 7 (La.App. 5th Cir.7/25/95); 659 So.2d 849, 852. The exception would be where a party cannot be joined. See LSA-C.C.P. art. 642. However, in the present case, there has been no showing that the Hans could not have been made parties to the litigation. Accordingly, we must decide whether the Hans are persons required to be joined as parties pursuant to LSA-C.C.P. art. 641.

Are the Hans persons described in Article 641?
LSA-C.C.P. art. 641 mandates the joinder of persons needed for just adjudication of an action. The issue herein is whether the Hans were persons needed for the just adjudication of appellants' declaratory judgment action. As previously indicated, while the declaratory judgment action was pending against Nations, Nations sold the subject property to the Hans. This action sought recognition or the declaration of a public right of way and servitude of passage across the subject property. As owners of property over which a public right of way or servitude of passage was sought, the Hans had an interest in the subject matter of the action, adjudication of which in their absence would practically impair or impede their ability to protect that interest. Clearly, by not joining the Hans in the litigation, their ability to protect their interest in the subject property was impeded, as evidenced by the fact that a judgment was rendered declaring a public right of way and servitude of passage existed across their property in favor of appellants' properties. Accordingly, we conclude that the Hans were persons who should have been joined as parties in the declaratory judgment action filed by appellants against Nations, and the consent judgment should therefore be annulled as concerned the rights of the Hans. But, our inquiry does not end here as appellants have asserted that the failure to join a person described in Article 641 is not a ground for nullity of a resultant judgment.

Is the Failure to Join a Person Described in Article 641 a Ground for Nullity of the Resultant Judgment?
Appellants assert that the failure to join the Hans in the action seeking a declaratory judgment, which action results in a judgment, does not constitute a ground for nullity of the judgment. Specifically, appellants argue that the ground for annulment set forth in LSA-C.C.P. art. 2002A(2) does not apply because the Hans were never defendants against whom judgment was taken.
LSA-C.C.P. art.2002 provides, in pertinent part, that:
A. A final judgment shall be annulled if it is rendered:
* * * * * *
(2) Against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid judgment by default has not been taken.
We do not read LSA-C.C.P. art. 2002A(2) as including only those persons who were named as defendants in lawsuits. To do so would leave unnamed persons who should have been joined pursuant to Article 641, but were not, without a means to attack a judgment that was rendered in the proceeding to which they were never made a party, unless they happened to learn of the judgment within the appeal delays. Therefore, because we find that the Hans should have been made defendants in the declaratory judgment action, we find that the ground for annulment of a judgment set forth in LSA-C.C.P. art. 2002A(2) is applicable herein. See Matherne, 544 So.2d at 726.
Moreover, we note that in Wiley v. Wiley, 97-652, p. 2 (La.App. 3rd Cir.12/10/97); *1020 704 So.2d 897, 898, the third circuit on its own motion, vacated a trial court judgment for the failure to join persons whose property rights were directly affected by the judgment, thereby prohibiting a complete and equitable adjudication. In Wiley, the defendant's parents had sold a piece of property to defendant and his wife during the marriage; however, the sale was not recorded until after the wife filed a petition for divorce from defendant. Subsequent to the parties' separation, but before the filing of the petition for divorce, defendant's parents sold the same piece of property to defendant's sister. Neither the parents nor the sister were ever made parties to the divorce proceedings. At the conclusion of the trial for partition of community property, the trial court found the first sale of the property to defendant and his wife to be valid, despite the failure to record the sale until after the second sale. The trial court further found the second sale of the same property was null and void as a simulated sale. On appeal by the defendant, the appellate court felt "constrained to vacate the trial court's judgment and remand the case for joinder of [defendant's parents and sister] pursuant to La.Code Civ.P. arts. 641, 646." Wiley, 704 So.2d at 898. The third circuit found that a complete and equitable adjudication could not be made in the absence of the parents and sister, whose rights in the property that was the subject of the litigation were directly affected by the trial court judgment. Wiley, 704 So.2d at 898.
If an appellate court can vacate a trial court judgment on its own motion for the failure to join parties whose rights in property are directly affected by the judgment, where those parties do not appeal or intervene in the underlying action, clearly the person who should have been made a party to the proceeding and whose property rights are adversely affected can seek to have a judgment annulled upon learning of a judgment that was rendered affecting their property rights.

PEREMPTORY EXCEPTION RAISING THE OBJECTIONS OF NO CAUSE OF ACTION AND NO RIGHT OF ACTION
Appellants further assert that the nullity action was not procedurally available to the Hans who, because of their knowledge of the pending litigation, could have intervened as defendants in the litigation prior to the execution of the consent judgment pursuant to LSA-C.C.P. art. 1091. Alternatively, appellants assert that the Hans could have intervened after the consent judgment was executed for the purpose of appealing in accordance with LSA-C.C.P. art.2086. Accordingly, appellants contend that the Hans had no cause or right of action to file the petition for nullity.

No Right of Action
The objection of no right of action tests whether the plaintiff has a "real and actual interest" in the suit. Sivils v. Mitchell, 96-2528, p. 3 (La.App. 1st Cir.11/7/97); 704 So.2d 25, 27. Stated another way, an exception of no right of action determines "whether the plaintiff belongs to the particular class to which the law grants a remedy for the particular harm alleged." Sivils, 704 So.2d at 27. The sole issue at trial of the exception is whether the plaintiff is in that group granted possible recovery by the law, not whether the plaintiff will or will not recover. Gustin v. Shows, 377 So.2d 1325, 1327-28 (La.App. 1st Cir.1979). The exception is appropriate when the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with a suit in a particular case.
Appellants rely on LSA-C.C.P. arts. 1091 and 2086 to support their contention that the failure of the Hans to intervene in the declaratory judgment proceedings as a defendant or an appellant terminates their right of action to annul the consent judgment. LSA-C.C.P. art. 1091 provides in pertinent part as follows:

*1021 A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by ... [u]niting with defendant in resisting the plaintiff's demand; or... [o]pposing both plaintiff and defendant.
LSA-C.C.P. art.2086 provides that "[a] person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken."
Notably absent from these articles is the words "shall" or "must." While intervention is allowed by these articles, it is not mandated. These articles do not impose a duty to intervene upon a person whose interests may be affected by a proceeding in which that person was not joined as a party. Nor do these articles proscribe as a consequence for failing to intervene, the loss of a right to assert a ground for annulment of the judgment which was rendered in the proceeding to which the person was not made a party.
Moreover, LSA-C.C.P. art. 641 provides that persons described in the article shall be joined. Therefore, the burden is placed on those already parties to the litigation to bring in all Article 641 persons, not upon the nonparties to intervene in actions to which they are required to be joined pursuant to Article 641. Consequently, the Hans had a real and actual interest in their petition for nullity of the consent judgment and therefore, had a right of action to bring the petition for nullity.

No Cause of Action
The objection of no cause of action is properly raised by the peremptory exception. The exception of no cause of action questions "whether the law extends a remedy to anyone under the factual allegations of the petition." Louisiana Paddlewheels v. Louisiana Riverboat Gaming Commission, 94-2015, p. 5 n. 3 (La.11/30/94); 646 So.2d 885, 888 n. 3; Treasure Chest Casino, L.L.C. v. Parish of Jefferson, 96-1010, p. 5 (La.App. 1st Cir.3/27/97); 691 So.2d 751, 754, writ denied, 97-1066 (La.6/13/97); 695 So.2d 982. The purpose of an exception pleading the objection of no cause of action is to determine the sufficiency in law of the petition. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690, p. 2 (La.7/5/94); 640 So.2d 237, 241.
Generally, no evidence may be introduced to support or controvert the exception. Treasure Chest Casino, 691 So.2d at 754. However, as set forth in City National Bank of Baton Rouge v. Brown, 599 So.2d 787, 789 (La.App. 1st Cir.), writ denied, 604 So.2d 999 (La.1992), the jurisprudence recognizes an exception to this rule, which allows the court to consider evidence which is admitted without objection to enlarge the pleadings. Otherwise, the exception is triable on the face of the pleadings, and, for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. The court must determine if the law affords plaintiff a remedy under those facts. Treasure Chest Casino, 691 So.2d at 754.
When a petition states a cause of action as to any ground or portion of the demand, an exception raising the objection of no cause of action must be overruled. Any doubts are resolved in favor of the sufficiency of the petition. Treasure Chest Casino, 691 So.2d at 755.
In the Hans' petition for nullity, they allege the following: 1) they acquired ownership of the subject property from Nations in January 1997; 2) a consent judgment was rendered on April 28, 1997, declaring a public right of way across the subject property in appellants' declaratory judgment action; 3) the consent judgment was recorded in the official records of Tangipahoa Parish on April 29, 1997; 4) the Hans were not legally cited to appear or served with process and made no appearance *1022 in the declaratory judgment action; 5) at the time the consent judgment was signed by Nations' counsel, Nations was no longer the owner of the subject property and had no authority from the Hans to enter into a consent judgment affecting the property; and 6) the Hans had no knowledge of the consent judgment declaring a public right of way across the subject property until May 23, 1997.
Accepting the factual allegations in the Han's petition for nullity as true, and having found that the judgment was subject to annulment for the failure to join as a party, a person described in Article 641, we also find that the trial court correctly denied appellants' peremptory exception raising the objection of no cause of action.
For these reasons, the failure to join the Hans as parties to the declaratory judgment action was a ground for nullity of the consent judgment. However, the annulment of the consent judgment is without prejudice to the rights of the parties to this appeal to litigate the merits of this case on remand with the appropriate and necessary parties. Thus, because we find the consent judgment was invalid, we do not specifically address appellants' first assignment of error, which goes to the merits of whether the servitude of passage and public right of way exists on the property independent of the consent judgment. This issue must be resolved after remand and trial on the merits.

PROPRIETY OF INJUNCTIVE RELIEF

(Assignment of Error IV)
Appellants also assign as error the trial court's grant of injunctive relief, where the Hans failed to avail themselves of legal remedies that existed. Additionally, in their brief, appellants argue that at the motion for new trial hearing, the trial court "inexplicably, and absent any motion before it to do so ... amended the January 7, 1998 judgment, granting the Hans a preliminary injunction, restraining the [appellants] from exercising the servitude."
The January 7 judgment rendered in connection with the petition of nullity provides in pertinent part as follows:
This matter is on petition for judicial review pursuant to the Han Family's Petition for Nullity of Judgment, Injunction, Damages, and Declaratory Judgment and Defendants' Exceptions of No Cause or Right of Action.
After considering the argument of counsel, memoranda of counsel, and the pertinent law, the Court finds as follows:
As required by Louisiana Civil Code Article 641, the Han Family was never joined as a party to the action that resulted in the signing of the consent judgment. Because the Han Family was never served with process and did not make a general appearance in accordance with Louisiana Code of Civil Procedure Article 2002, the consent judgment of April 28, 1997 shall be annulled.
Additionally, the Court finds that because there is no documentation recorded in the Tangipahoa Parish public records regarding the alleged right of way, the Public Records Doctrine mandates that a right of way does not exist. Louisiana Revised Statute 9:2721(A) and Louisiana Revised Statute 9:2756.
Therefore, IT IS ORDERED, ADJUDGED, AND DECREED the consent judgment of April 28, 1997 shall be annulled.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants' Exceptions of No Cause or Right of Action be dismissed.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment rendered herein in favor of John Han, Youn Han, Sung Ja Han, Michael Han, and Jenney [sic] Han and against [appellants].
Notably, this judgment does not specifically grant an injunction in favor of the Hans.
*1023 In their motion for new trial, in addition to asserting that the judgment was contrary to the law and evidence, appellants alternatively sought to amend the judgment. In the supporting memorandum, appellants asserted that the judgment is "otherwise ambiguous and unclear in several respects as to the relief granted and should be amended and clarified accordingly."
At the hearing on the motion for new trial, appellants' counsel expressed that he was uncertain what the trial court meant by it's provision in the judgment that "there be Judgment rendered in favor of the Hans and against [appellants.]" Counsel for the Hans asserted that the trial court had ruled that no predial servitude existed. Appellants' counsel specifically questioned whether the trial court had found that there was no predial servitude, where there was nothing in the judgment pertaining to the existence or nonexistence of a predial servitude. The trial court responded "I think all that I meant ... is the fact that the Exceptions were denied and Judgment was rendered."
Despite this clarification, at the conclusion of the hearing the trial court ruled as follows:
I don't think there's enough there to grant the new trial, so, I'm going to deny that.
As to amending the Judgment, I don't know if we would call it an amendment, but I want to clarify it. As to the preliminary injunction, the Judgment is not clear as to that, and I did tell [appellants' counsel] that it didn't relate to the preliminary injunction, however, since I have ... denied the Exceptions ... at the same time, to not allow the preliminary injunction is at odds with one another. So, for clarification purposes, I will grant the preliminary injunction, subject to further litigation in this matter.
And I'm sure that this one will probably be working its way to Baton Rouge.
Although the trial court deemed this ruling a "clarification," we find that it constituted a substantive amendment to the judgment. A substantive amendment to a judgment is an absolute nullity. Stoffer v. Stoffer, 29,458, p. 3 (La.App. 2nd Cir.5/7/97); 693 So.2d 1229, 1231. Moreover, the trial court's written judgment is controlling even if the trial judge may have intended otherwise. Rebco Marine, Inc. v. Homestead Insurance Company, 96-1975, p. 6 (La.App. 1st Cir.12/29/97); 706 So.2d 508, 511.
In the present case, the January 7 judgment was silent as to the issue of a preliminary injunction. Where a trial court's judgment is silent with respect to a party's claim, it is presumed the trial court denied the relief sought. Testa Distributing Company, Inc. v. Tarver, 584 So.2d 300, 303 n. 4 (La.App. 1st Cir.1991). The April 14 amendment granting an injunction to the Hans operated against appellants, the only parties to move for a new trial, and in favor of the Hans who did not request a new trial. Appellants' request for clarification pertained to the existence of the predial servitude, not injunctive relief. We find that the April 14 amendment is a substantive amendment of the January 7 judgment because it grants relief (the injunction) which by law was presumably denied in the January 7 judgment. See Testa, 584 So.2d at 303 n. 4.
The usual remedy applied by an appellate court that finds an amendment made as to substance is to reverse the amended judgment and reinstate the original judgment. See Hebert v. Hebert, 351 So.2d 1199, 1200 (La.1977); Alliance for Good Government, Inc. v. Jefferson Alliance for Good Government, Inc., 96-309, p. 7 (La.App. 5th Cir.10/16/96); 683 So.2d 836, 839. We reverse that part of the April 14 judgment that grants a preliminary injunction "restraining [appellants] from trespassing across the Han Family's property, specifically utilizing the road which runs through the middle of the Han *1024 Family property and which is the subject of these proceedings."

CONCLUSION
For the reasons set forth in this opinion, we affirm in part, and reverse in part, the April 14 judgment. Specifically, that part of the April 14 judgment denying the motion for new trial is affirmed. That part granting a preliminary injunction is reversed without prejudice to the parties to bring an appropriate action between the proper litigants. We affirm and reinstate the January 7 judgment. We remand the matter to the trial court to conduct proceedings on the merits of the petition for declaratory judgment and more specifically to determine whether a servitude of passage and/or right of way exists over the Hans' property. Costs of this appeal are assessed equally between appellants and the Hans.
APRIL 14 JUDGMENT AFFIRMED IN PART, REVERSED IN PART; ORIGINAL JANUARY 7 JUDGMENT AFFIRMED AND REINSTATED; REMANDED FOR DETERMINATION OF MERITS OF THE SUIT FOR DECLARATORY JUDGMENT WITHOUT PREJUDICE TO THE PARTIES.
NOTES
[1] Robert Schorr's name is spelled "Shorr" in some documents in the record. However, we will use "Schorr" to refer to him in this opinion as this is the spelling utilized by Schorr on documents in the record that contain his signature.
[2] These family members include Youn W. Han, Sung Kim Han, John K. Han, Michael K. Han, and Jenny Sue Han. Throughout this opinion, we will refer collectively to these family members as the Hans.
[3] The litigants refer to "public right of way," "servitude of passage," "easement," "predial servitude," and "legal servitude" interchangeably, as if they were the same legal devices. In certain instances, this is clearly a confusion of the legal terms. The consent judgment declared the existence of both a public right of way and a predial servitude of passage. The pleadings preceding the consent judgment make it unclear whether there was confusion of these terms or an intent to establish both a public right of way and a predial servitude of passage on the property through the consent judgment. Our resolution of this appeal precludes us from addressing the merits of whether the Stephensons and Schorr were entitled to a predial servitude through the property or whether a public right of way existed on the property.
[4] The 50 foot right of way apparently refers to a gravel road that runs along the northeastern borders of the property.
[5] We note that the record contains "Reasons for Judgment" reflecting these actions of the trial court, which reasons were signed by the trial court on July 7, 1997. However, the record does not contain a judgment in accordance with these reasons. As no party has appealed from this judgment, the omission is not relevant to our resolution of this appeal.
[6] In his affidavit, Dr. Stephenson states that the only legal access to his property is by the right of way running between the two tracts of the Hans' property, and he has used the right of way frequently since 1976. Schorr asserts in his affidavit that he has regularly used the right of way since acquiring his property in May 1992.
[7] The 1995 comment to Article 641 provides as follows:

The amendments to Articles 641 through 646, 926 and 927, codify the holding of the Louisiana Supreme Court in State Through Department of Highways v. Lamar Advertising Co. of La., Inc., 279 So.2d 671 (La.1973), that courts determine whether a party should be joined and whether the action could proceed if the party could not be joined by a factual analysis of the interests involved. The factors to be considered are set out in the amendments to Articles 641 and 642 and replace the formal classification of parties as necessary or indispensable based solely on the interests of the party to be joined. The failure to join a party may be raised at any time through the peremptory exception.