JUDITH SENAC SHERAR,
v.
JULIE BESSE AND LLOYD BESSE, JR.
No. 2007 CA 2003R.
Court of Appeals of Louisiana, First Circuit.
August 12, 2009.
Not Designated for Publication
JOHN A. KELLER, Counsel for Plaintiff/Appellee, Judith Senac Sherar.
MARION B. FARMER, DAVID J. KNIGHT, SUELLEN RICHARDSON, and LEONARD J. CLINE, THOMAS G. ROBBINS, Counsel for Defendant/Appellant, Julie Besse.
Before: CARTER, C.J., WHIPPLE, PARRO, KUHN, GUIDRY, PETTIGREW, DOWNING, GAIDRY, McDONALD, McCLENDON, HUGHES, AND WELCH, JJ.
WHIPPLE, J.
The defendant, Julie Besse,[1] appeals a judgment ordering her to pay to the plaintiff, Judith Senac Sherar, the sum of $48,709.42, plus interest, as repayment of a loan made by the plaintiffs father, Charles E. Senac, to Ms. Besse and her son several months prior to Mr. Senac's death. For the reasons that follow, we affirm.

FACTUAL BACKGROUND
In April 2000, Mr. Senac placed $100,000.00 in a certificate of deposit (CD) at Resource Bank in St. Tammany Parish. This CD was placed in both his name and the name of Ms. Sherar and was paying interest in the amount of 6.5%. At around the same time, he created similar CDs in the same amounts for his other four living children. Like the CD at issue in this matter, each of these CDs was put jointly in the name of Mr. Senac and the name of one of his other four living children. He often used these CDs as collateral when lending money to his children and other close relatives.
In February 2002, approximately eleven months before his death on January 9, 2003, Mr. Senac agreed to loan Julie Besse, who had been a close friend of his for many years, and her son, Lloyd Besse, the sum of $50,000.00, so that Lloyd could purchase immovable property and a trailer in Bush, Louisiana. To that end, Mr. Senac took out a loan himself from Resource Bank in the amount of $50,000.00. He used the CD at Resource Bank in his and Ms. Sherar's names as collateral for this loan.
The original promissory note signed by Mr. Senac on February 19, 2002, showed a maturity date of April 14, 2002, the date that the CD was to mature. The CD was renewed on April 14, 2002. Shortly thereafter, the loan from Resource Bank to Mr. Senac was renewed with a lower interest rate of 5%. Mr. Senac then signed a second promissory note that required him to pay the bank principal and interest in the amount of $500.00 per month for 22 months, plus a balloon payment of $43,504.59.
The loan agreement entered into between Mr. Senac and the Besses was not reduced to writing; therefore, the terms and conditions of this agreement were established by the testimony of the witnesses, as well as the documentary evidence. The record reveals that during Mr. Senac's lifetime, Julie Besse made three payments in the amount of $487.92 and eight payments in the amount of $500.00 to Mr. Senac in repayment of the loan, purportedly in accordance with the repayment terms of the oral agreement, and seemingly in accordance with the loan agreement Mr. Senac had with the bank.[2] After Mr. Senac's death, Julie Besse attempted on at least two occasions to deliver a cash payment on the loan directly to the plaintiff or her husband; however, Ms. Sherar and her husband refused to accept these payments and instructed Julie Besse to make the payments directly to the bank.
Apparently, no payments were ever made directly to the bank after Mr. Senac's death, and the bank eventually foreclosed on the CD to pay off the balance due on the loan.[3] In early 2003, the plaintiff made demand on the Besses to repay the entire amount owed on the loan. Notwithstanding correspondence to the plaintiffs attorney from an attorney on behalf of the Besses, acknowledging the debt and indicating his clients' wishes to "abide by the oral agreement concerning the loan from Charles E. Senac," no further payments on the debt were made either to the bank or to the plaintiff. This litigation followed.

PROCEDURAL HISTORY
Ms. Sherar filed suit on March 27, 2003, naming both Julie and Lloyd Besse as defendants, and seeking to recoup from them the $50,000.00 she claimed to have lost from her CD when the bank seized the funds due to the default on the loan, along with all interest she lost. In her petition, plaintiff alleged she suffered the loss of those funds due to the defendants' failure to honor their obligation to repay the loan to Mr. Senac.
The Besses filed peremptory exceptions pleading the objections of no cause of action and no right of action, which the trial court denied on June 4, 2003.[4] The Besses then filed an answer contending that the transfer of funds was a gift or donation and, in the alternative, that the transaction was between Mr. Senac and Lloyd Besse only, and that Julie Besse was not a party thereto. Finally, defendants argued, in the alternative, that the transfer of funds was to be repaid over a period of time without interest and with no balloon payment.
Subsequently, Julie Besse filed a motion for summary judgment, supported primarily by affidavits from her and her son, on the grounds that she was not a party to the transaction at issue, that she received none of the funds directly, that she received no title or interest in the property purchased by her son with the funds, and that the transfer of funds was made solely for the benefit of her son. The motion was scheduled for hearing in October 2004; however, the parties agreed to submit the matter on briefs without oral argument. The trial court denied the motion by judgment signed December 6, 2004.
Before the trial court ruled on the motion for summary judgment and prior to any trial on the merits, the parties entered into a consent judgment, which was read into the record in open court on November 8, 2004. The judgment was later signed on March 9, 2005. Pursuant to the specific terms of the settlement, Lloyd Besse agreed to make payments to the plaintiff in repayment of the loan from Mr. Senac as follows:
1) $12,000.00 on or before December 8, 2004, representing twentyfour (24) $500.00 payments due on the loan from January 1, 2003 through December 1, 2004;
2) The balance of the loan[, $41,847.51, which] includes both past due interest on the $500.00 payments and remaining balance[,] will incur interest at a rate of five (5%) percent and is to be paid in monthly installments of $500.00 starting January 1, 2005 and ending with a final payment of $570.90 due on July 1, 2013....[5]
The consent judgment also provided that the plaintiff would be entitled to a judicial and special mortgage on the property purchased with the proceeds from the loan from Mr. Senac and that Lloyd Besse would apply for financing to repay the loan.[6] Finally, the consent judgment provided that all claims against Julie Besse would be dismissed, with prejudice, upon the payment of the initial $12,000.00 noted above.
Lloyd Besse apparently failed to make the $12,000.00 payment to the plaintiff on or before the required date. Thereafter, Ms. Sherar discovered that Lloyd Besse had filed a bankruptcy petition in 2005, and that the property that had been purchased with the proceeds of the loan from Mr. Senac was already encumbered with a mortgage in favor of Whitney National Bank. Therefore, on January 10, 2006, plaintiff filed a Petition to Reinstate Claim and/or Annul Judgment, naming only Julie Besse as defendant. In her petition, Ms. Sherar noted that Lloyd Besse had filed for bankruptcy and had failed to advise, at the time of the consent judgment, that the property was already encumbered by a mortgage. Plaintiff further reasserted her original claims against Julie Besse and alleged the facts establishing a breach of the consent judgment by Lloyd Besse's failure to pay the $12,000.00 before the agreed-upon date.
After a hearing on the petition, the trial court noted that no money was paid in accordance with the terms of the consent judgment. The trial court also found that the consent judgment was null because the defendants had made no efforts to do what they had obligated themselves to do in the consent judgment. The trial court noted that the terms of the consent judgment only authorized Julie Besse to be dismissed from the matter upon the payment of the $12,000.00. Since that money had not been paid, the trial court determined that the parties were back at "square one," and the matter was to be set for trial.[7]
The trial court subsequently conducted a trial on the merits, after which it issued written reasons for judgment finding that the transfer of the money to Julie Besse was always intended as a debt and not a gift. The trial court further stated in its written reasons for judgment:
The evidence presented at trial showed that Julie Besse and Charles Senac had a very close relationship. Mr. Senac did not have a relationship with Lloyd Besse, III. Because of the close relationship between Julie and Mr. Senac, he trusted her to repay the loan without any documentation. The evidence is clear that Mr. Senac made an agreement with Julie Besse for repayment of the loan, even though the loan proceeds were used by Lloyd Besse, III to purchase property. Julie Besse was a party to the transaction. She was present with Mr. Senac when he obtained the loan from Resource Bank. Further, the evidence showed that Julie Besse acknowledged on occasions to Mrs. Sherar that she was obligated to repay the loan. Ms. Besse never contended that her son was solely responsible for repayment of the loan. Ms. Besse was the party who attempted to make payments on the loan not her son. Ms. Besse continued to make payments on the loan until Mr. Senac's death. The Court therefore finds that Julie Besse is obligated to repay the funds she received as a loan from Charles Senac.
Judgment was rendered in accordance with these findings, ordering Julie Besse to pay Judith Senac Sherar the total amount of $48,709.42, plus judicial interest from January 23, 2003, until paid. It was from this judgment that Julie Besse then appealed.
After this court rendered its original judgment in July 2008, Julie Besse applied for writ of certiorari to the Louisiana Supreme Court. The Louisiana Supreme Court ultimately determined that this court had failed to reach an executable majority opinion. Therefore, the Louisiana Supreme Court then remanded this matter to this court to hold an en banc hearing to consider the matter.[8] Thus, our decision is rendered herein after en banc consideration of the matter.

NO CAUSE OF ACTION AND NO RIGHT OF ACTION
In her first assignment of error, Julie Besse contends the trial court erred in denying her exceptions raising the objections of no cause of action and no right of action. At the outset we note that although these two exceptions are often confused or improperly combined within the same exception, the peremptory exceptions of no right of action and no cause of action are separate and distinct. LSA-C.C.P. art. 927(A)(5) and (6); Badeaux v. Southwest Computer Bureau, Inc., XXXX-XXXX, p. 6 (La. 3/17/06), 929 So. 2d 1211, 1216.
The function of an exception of no right of action is a determination of whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition. LSA-C.C.P. art. 927; Turner v. Busby, XXXX-XXXX, p. 4 (La. 9/9/04) 883 So. 2d 412, 415. Stated another way, the exception of no right of action serves to question whether the plaintiff in the particular case is a member of the class of persons to which the law grants a remedy for the particular harm alleged. Treasure Chest Casino, L.L.C. v. Parish of Jefferson, 96-1010, p. 4 (La. App. 1st Cir. 3/27/97), 691 So. 2d 751, 754, writ denied, 97-1066 (La. 6/13/97), 695 So. 2d 982. The introduction of evidence is permitted to support or controvert an exception of no right of action. LSA-C.C.P. art. 931.
In contrast, an exception of no cause of action questions whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition. Badeaux, XXXX-XXXX at p. 7, 929 So. 2d at 1217. No evidence is admissible to support or controvert the exception. LSA-C.C.P. art. 931. The exception is triable on the face of the petition and, to determine the issues raised by the petition, each well-pleaded fact in the petition must be accepted as true. Treasure Chest Casino, L.L.C., 96-1010 at p. 5, 691 So. 2d at 754.
It is clear from the original allegations in the exceptions of no cause of action and no right of action, as well as the arguments to this Court, that Ms. Besse only stated an exception of no right of action. Although she contends that Ms. Sherar has failed to state a cause of action in her petition, it is clear that the argument in support of her claim is based upon whether Ms. Sherar was the proper party to sue to collect the debt that is owed. At no point in the memorandum in support of the exceptions or in her brief to this Court does she argue that the law does not extend a remedy to anyone under the factual allegations of the petition. Rather, she simply argues that the estate representative must sue to collect the debt and that Ms. Sherar is not the appropriate party to do so. Accordingly, we will consider only the exception of no right of action at this time.[9]
In support of her argument on appeal, Ms. Besse relied on LSA-C.C.P. art. 685 and contends that as a matter of law, the right of action to sue to enforce a right of the deceased or his succession is conferred to the succession representative. Louisiana Code of Civil Procedure article 685 provides:
Except as otherwise provided by law, the succession representative appointed by a court of this state is the proper plaintiff to sue to enforce a right of the deceased or of his succession, while the latter is under administration. The heirs or legatees of the deceased, whether present or represented in the state or not, need not be joined as parties, whether the action is personal, real, or mixed. (Emphasis added.)
In making her argument to this Court, Ms. Besse failed to consider the import of the emphasized portion of the above code article; however, we note that it is undisputed that Mr. Senac's succession was not under administration at the time the suit was filed. Moreover, the trial testimony further revealed that the named testamentary executor of the estate, Ronald Senac, had no plans to open the succession, since all the property in the succession had already been distributed according to Mr. Senac's wishes as reflected in his will, and no property remained in the succession, other than the potential recovery from this lawsuit. Accordingly, LSA-C.C.P. art. 685 and the jurisprudence applying it are inapplicable.
Since Mr. Senac's succession was not under administration at the time the instant suit was filed, guidance is found in the Civil Code. Specifically, LSA-C.C. art. 935 provides as follows:
Immediately at the death of the decedent, universal successors acquire ownership of the estate and particular successors acquire ownership of the things bequeathed to them.
Prior to the qualification of a succession representative only a universal successor may represent the decedent with respect to the heritable rights and obligations of the decedent.
In addition, prior to the qualification of a succession representative, a successor may exercise rights of ownership with respect to his interests in a thing of the estate as well as his interest in the estate as a whole. LSA-C.C. art. 938(A).
These articles clearly authorize the universal successors of the deceased to bring all actions that the deceased had a right to institute when the succession is not under administration. Furthermore, it is now well-settled that an heir can sue directly without having been recognized as such by a court; all that is required is that he furnish satisfactory evidence of his right to inherit. Jones v. McDonald's Corp., 618 So. 2d 992, 996 (La. App. 1st Cir. 1993). Thus, subject to the requirement of submitting proof of his status, a universal successor has the right to institute suit prior to the opening of the succession. Taboni v. Estate of Longo, XXXX-XXXX, p. 5 (La. App. 4th Cir. 5/16/01), 803 So. 2d 55, 58, reversed on other grounds, 2001-2107 (La. 2/22/02), 810 So. 2d 1142.
In the instant case, the record contains sufficient proof of Ms. Sherar's status as a universal successor with the right to represent the decedent and claim the debt owed her. The last will and testament of Mr. Senac was entered into evidence and clearly established that plaintiff was not only an heir, but a universal and/or general legatee. As such, she had the right and authority to exercise rights of ownership with respect to her interests in a thing of the estate, i.e., the debt owed to the estate. See LSA-C.C. art. 938(A). Moreover, the testimony at trial established that Mr. Senac distributed all of his property to his children before his death by creating the aforementioned CDs. At the time that Mr. Senac used the remaining CD in his and plaintiff's names as collateral for the loan with Resource Bank, it was the only CD still in existence or available for use as collateral. At the time of trial, there was no other property belonging to the estate, with the exception of the potential recovery in this suit. Thus, the plaintiffs right to inherit is sufficiently established by the evidence in the record, and the trial court did not err in denying the exception.[10]

SUBSTANTIVE MERITS OF APPEAL
Having found the trial court did not err in denying the defendants' exceptions, we now must determine if the trial court manifestly erred in finding, based on the evidence presented, that the plaintiff sufficiently proved that Mr. Senac loaned the $50,000.00 to Julie Besse, thus obligating her to repay the loan to Ms. Sherar, who is now the heir to that debt. After a thorough review of the record before us, and in light of the earlier consent judgment entered into and rendered in open court, we find that the trial court correctly concluded that Ms. Sherar established her claim against Ms. Besse by a preponderance of the evidence.[11]
Ms. Sherar testified that her father took out a loan from the bank using the CD in their joint names as collateral so that he could loan money to Julie Besse. According to Ms. Sherar, her father did not know Mr. Besse well, and "[ajnything he did, he did for Julie." Ms. Sherar testified that she voiced some concern to her father about his decision to lend Ms. Besse the money but also made clear that she would not interfere with his desires at the time.
Ms. Besse denied that she was ever a party to the loan and insisted that the loan was simply a transaction between Mr. Senac and her son, which allowed her son to purchase property in Bush, Louisiana. Ms. Besse acknowledged that she made payments on the loan, but insisted that she was simply making payments on behalf of her son and denied that she had any personal obligation on the loan. According to Ms. Besse, her son gave her the payments, either in cash or by check, and she merely delivered them to Mr. Senac or the bank. Notably, despite testifying that she had copies of the checks that her son had provided her to give to Mr. Senac, no copies of these checks were ever introduced into the record before us.
By all accounts, Mr. Senac and Julie Besse were longtime friends and had a very close relationship. As noted by the trial court, she would visit him two to three times a week, taking him to play golf and have lunch. Julie Besse also worked for Mr. Senac and his wife for approximately ten years and took care of them.[12] Furthermore, it is undisputed that Julie Besse accompanied Mr. Senac to the bank and was present when he obtained his loan. It is also clear from the record that Julie Besse was the party who made the payments on the loan until Mr. Senac's death and who even attempted to make payments to the plaintiff and the bank thereafter.
In contrast, although the funds from the loan Mr. Senac obtained from the bank were used to purchase a trailer and immovable property in Lloyd Besse's name alone, it is undisputed that Mr. Besse had no personal relationship with Mr. Senac. Mr. Besse was not present at the bank when Mr. Senac obtained the loan, nor did he personally make any payments to Mr. Senac or the bank, either before or after Mr. Senac's death.
The trial court apparently credited the plaintiffs testimony over that of Julie Besse on these disputed facts and also noted plaintiffs testimony that she had other conversations with Julie Besse concerning the loan shortly before Mr. Senac's death. Furthermore, the trial court noted that Julie Besse never contended at any time that she was not obligated to repay the loan or that her son was the responsible party. The record is also clear that Julie Besse attempted to continue to make payments to the plaintiff on more than one occasion after Mr. Senac's death.
In addition, the record demonstrates that the Besses had previously indicated a desire to abide by the terms of the oral agreement concerning the loan from Mr. Senac in a letter sent by their attorney to the attorney for the plaintiff. This letter acknowledges the debt on behalf of both Julie and Lloyd Besse and lends support to the trial court's findings of fact in this matter.
Accordingly, it is clear that the evidence amply supports the trial court's findings and its ruling, which involved purely factual findings based on credibility determinations. As a reviewing court, we may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Moreover, when, as here, findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings, for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Hanks v. Entergy Corporation, XXXX-XXXX, pp. 22-23 (La. 12/18/06), 944 So. 2d 564, 580. Given the great deference owed to the trial court's findings, and the record herein, we find no error by the trial court in its conclusion that the loan was made to and owed by mother and son. Thus, we find no error in the trial court's judgment, which is proper and correct, considering the record before us.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the defendant, Julie Besse.
AFFIRMED.
PARRO, J., dissenting in part and concurring in part.
I concur with the majority opinion's conclusion as to manifest error. The trial court had reasonable evidentiary support for its factual finding that Julie Besse owes the debt, and the record as a whole does not indicate that this finding was manifestly erroneous.
However, prior to the qualification of a succession representative, only a universal successor may represent the decedent with respect to the heritable rights of the decedent. See LSA-C.C. art. 935. Sherar's status as a universal successor gives her the right to represent the decedent and claim the debt owed him. Yet, the judgment in this case was against Julie Besse and in favor of Sherar, rather than in favor of her as the representative of her father's unopened succession.
Moreover, the CD at issue was in her name and her father's name. Therefore, as between Sherar and the bank, she had "title" to the funds represented by the CD. See LSA-R.S. 6:314. However, she was not owner of the funds represented by the CD, unless those funds were donated to her inter vivos by a notarial act. See LSA-C.C. art. 1541. The record does not indicate that any such donation occurred. Therefore, as to the rights of inheritance, the funds represented by the CD were still part of Mr. Senac's patrimony, and the debt owed by Julie Besse is not owed to Sherar, but to the succession of her father. Therefore, the trial court erred in failing to order the joinder of Sherar's siblings, as necessary parties. See LSA-C.C.P. arts. 641 and 642. Accordingly, under the authority of LSA-C.C.P. art. 927, I would notice on our own motion the failure to join these necessary parties.
For these reasons, I would vacate the judgment, insofar as it was rendered in favor of Sherar, rather than to her as the representative of her father's succession. I would remand to the trial court to allow Sherar the opportunity to amend her petition pursuant to LSA-C.C.P. art. 934. To that limited extent, I must dissent from the majority's opinion.
HUGHES, J., dissenting.
I respectfully dissent.
The uncontested facts are that Lloyd Besse received $50,000 from Charles E. Senac which he used to purchase a lot and trailer. The loan was unsecured and the agreement was verbal. The check evidencing the loan proceeds was payable to Lloyd Besse only. Mr. Senac passed away and Lloyd Besse took bankruptcy. Mr. Senac's heir now attempts to recover from Lloyd Besse's mother.
The contested evidence, surprisingly enough, consists of the plaintiffs claim that the mother was a co-maker of the loan, and, of course the mother's denial. The majority concludes that plaintiff has established her claim "by a preponderance of the evidence" involving "purely factual findings based on credibility determinations."
Civil Code article 3038 provides, "Suretyship must be express and in writing." The mother of Mr. Besse has done neither of these. The fact she had a close relationship with the lender before his death does not make her the son's surety. The fact she was present when the son received the loan proceeds does not make her a "party" to the unwritten contract. The fact the mother made payments after the fact either for or on behalf of her son does not make her a co-obligor or guarantor of the original loan. The fact an attorney hired after mother and son had both been sued wrote a letter which does not expressly state the mother is responsible for the loan and is not signed by her cannot change her legal status.
The very reason for article 3038 is to avoid this sort of swearing match in order to come up with "purely factual findings" with which to create a "preponderance" of the evidence. The only competent evidence in this case is the check for the proceeds (Besse #1). The lender could have made the check payable to both mother and son, or the mother alone, if he so chose.
GUDRY, J., dissenting.
I respectfully dissent. I agree with the majority's summation of the disputed testimonial evidence from which the trial court made credibility determinations in resolving the issue presented. However, I am of the opinion that both the trial court and the majority err in deciding the issue without due consideration to the documentary evidence which most clearly indicates the intentions of Mr. Senac who unfortunately is deceased and unable to testify and should, as a matter of law, override those credibility determinations.
Ordinarily, the factual findings made by the trial court, often based on credibility determinations, are to be given great deference on review, and in the absence of manifest error, we are constrained to affirm the findings of the trial court. See Rosell v. ESCO, 549 So.2d 840, 844-45 (La. 1989). However, where documentary or objective evidence so contradicts the witnesses' testimonies that a reasonable fact finder would not credit the witness's testimony, a reviewing court may well find manifest error or clear wrongness even in a finding purportedly based on credibility determinations. Landiak v. Richmond, 05-0758, p. 19-20 (La. 3/24/05), 899 So.2d 535, 549.
The record contains the testimony of Lloyd Besse, together with physical documentation that is in contrast with the factual conclusions drawn by the trial court based on the testimony of the witnesses. Lloyd testified that on the day that he originally was supposed to purchase immovable property and a trailer in Bush, Louisiana, the financing he had arranged fell through. He stated that Mr. Senac gave him a cashier's check in the amount of $50,000.00 with which to buy the property. A cashier's check from Resource Bank, dated February 19, 2002, made out to Lloyd Besse, only and imprinted with the notation "Re: Charles E. Senac" was entered into evidence and is part of the record before us. Lloyd testified that he promptly used those funds to buy the property in Bush. He also testified that he began making repayments on the loan, usually giving his mother the cash and having her deliver it to Mr. Senac. According to Lloyd Besse, he was the one obligated to Mr. Senac on the loan, but he ceased making payments after Mr. Senac's death due to his own financial difficulties and impending bankruptcy.
In this case, against the backdrop of the inconsistent and circumstantial testimony concerning to whom the loan was made, I find that the documentary evidence of the cashier's check, which was made out on the same date, by the same bank, in the same amount of money as the loan to Mr. Senac, and made payable to Lloyd Besse alone, so contradicts the plaintiffs witnesses' testimonies that the loan was made to Julie Besse, that the trial court's decision to credit that testimony over the contrary proof revealed by the cashier's check itself amounts to manifest error. This is particularly so under the circumstances of this case, where the agreement of loan was an oral agreement and one of the parties to that agreement is deceased and unable to provide testimony.[1] Given that all of the other relevant facts are essentially not in dispute, with the exception of the ultimate fact being to whom the loan was made, I find the only reasonable conclusion that can be drawn from the conflicting testimony on this issue would be that reflected by the documentary evidence, which speaks for itself.
Moreover, to the extent that it might be argued that Julie Besse somehow agreed to be a co-signer on the loan, or a surety, that type of agreement must be in writing. La. C.C. art. 3038. It is wholly undisputed that there was no written agreement to support such an allegation.
Accordingly, I dissent from the majority's conclusion finding Julie Besse is liable to repay a loan that was made to her son, by her friend, Mr. Senac. As acknowledged by the majority, Ms. Besse received no benefit from the monies loaned to her son. She did not receive any of the funds directly, she received no title or interest in the property purchased by her son with the funds and with the knowledge of Mr. Senac, and the transfer of the funds was made with the understanding that the sole use of it was for Lloyd Besse to purchase property. Finally, the only piece of documentary evidence in the record, the money order made to Lloyd Besse alone, clearly establishes the inevitable conclusion that the loan was made, and intended to be made, to Lloyd Besse alone.
Therefore, I would reverse the judgment of the trial court and render judgment in favor of Julie Besse, dismissing plaintiffs claims with prejudice.
NOTES
[1] The original petition named as defendants Julie Bessie and her son, Lloyd Bessie, Jr. It is clear from a review of the briefs and the remainder of the record that the correct spelling of the defendants' last name is Besse, and that is the spelling that will be used throughout this opinion. Furthermore, we note that the original petition improperly designated Ms. Besse's son as Lloyd Besse, Jr., rather than by his correct identity, Lloyd Besse III, as the parties later acknowledged on the record. For reasons noted later in this opinion, Lloyd Besse HI is no longer a party to this litigation. Where it is necessary to refer to Mr. Besse by name in this opinion, he will not be referred to with any identifying suffix.
[2] The difference in the amount of the payments is apparently due to the fact that two separate promissory notes were signed regarding the loan made to Ms. Besse and her son as noted above.
[3] After Mr. Senac died, Julie Besse did attempt to discuss making payments on the loan with Chris Keller, who was the chief lending officer at the bank at the time. However, by the time she went to the bank, Mr. Keller informed her that it was too late because the bank had already foreclosed on the CD and settled the loan.
[4] There does not appear to be a signed judgment concerning these exceptions in the record; however, there is a minute entry that indicates that the exceptions were denied on the date noted above. The minute entry further indicates that the trial court instructed counsel to file a written judgment within five days; however, there is nothing in the record to demonstrate that the parties complied with this order.
[5] An amortization schedule was attached to the judgment as Exhibit A.
[6] The judgment further provided that if Lloyd's application for a permanent loan were initially denied, he was required to apply for another loan from a financial institution or other entity to pay off the debt when requested to do so by Ms. Sherar; however, the judgment noted that he should not be obligated to do so more than once a year.
[7] Although the trial court had noted that the parties were back at "square one," Lloyd Besse apparently was no longer capable of being a party in this matter, presumably due to the automatic stay that had been issued in his bankruptcy proceeding. Therefore, the matter proceeded against Julie Besse alone.
[8] The original judgment of this court was rendered by a five-judge panel. The five-judge panel voted as follows: two judges voted to reverse the trial court and render judgment in favor of the defendant; two judges dissented and would have affirmed the decision of the trial court; and one judge dissented in part and concurred in part. See Sherar v. Besse, 2007 CA 2003 (La. App. 1 st Cir. 7/23/2008) (unpublished opinion).
[9] We note, however, to the extent that it is an issue, we find that Ms. Sherar does have a cause of action pursuant to LSA-C.C. arts. 935 and 938 cited below.
[10] We note that while it is technically possible that the other heirs could state claims for their portions of the recovery in this suit, the other heirs already received their portions of their inheritance when they took their CDs from the bank. To the extent that Ms. Sherar lacks the procedural capacity to file suit on behalf of the other heirs, such an objection should have been raised by the dilatory exception pleading the objection of lack of procedural capacity; however as Ms. Besse failed to plead this exception prior to or in her answer, the exception has been waived. LSA-C.C.P. arts. 926 and 928(A). We note further that to the extent this debt is held by the heirs in indivision, Ms. Besse has the right as a co-owner in indivision to act to preserve the thing held in indivision without the concurrence of any other co-owner. See LSA-C.C. art. 800.
[11] In her second assignment of error, Ms. Besse challenged the trial court's denial of her motion for summary judgment. Considering our resolution of the merits of the appeal, we do not address this assignment of error, which we deem to be moot.
[12] Ms. Besse denied that she ever worked for the Senacs and insisted that she only spent time with them because she wanted to; however, Ms. Sherar testified that Ms. Besse worked for Mr. Senac and was paid for her services, which included caring for Mrs. Senac during her illness.
[1] I note that the heavier evidentiary standard provided by La. R.S. 13:3722, more commonly known as the "dead-man's statute," is inapplicable here. That statute provides that a debt or liability of the deceased must be proved by the testimony of "at least one creditable witness other than the claimant, and other corroborating circumstances." In this case, an heir is claiming a debt allegedly owed to the decedent. Notwithstanding, the evidence presented in this matter was sufficient to meet the heavier evidentiary burden imposed by the dead-man's statute.